**CV 06 2147**

FORM FOR USE IN APPLICATIONS

FOR MOTIONS UNDER 28 U.S.C. § 2241

Name    **Alphonse Persico**

Prison Number **05517-054**                    IRIZARRY, J.

Place of Confinement **MDC Brooklyn, New York**          GO, M.J.

**United States District Court for the Eastern District of New York**

Case No. _____

          (To be supplied by Clerk of U.S. District Court)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 0 9 2006 ★
BROOKLYN OFFICE

**Alphonse Persico,**
          **Petitioner,**

                    **v.**

**Paul Laird, Warden,**
          **Respondent.**


          (If movant has a sentence to be served in the <u>future</u> under a federal judgment which he wishes to attack, he should file a motion in the federal court which entered the judgment.)

### MOTION

1.    Name and location of court which entered the judgment of conviction under attack
      United States District Court for the Eastern District of New York

1

2.  Date of judgment of conviction: November 21, 2003

3.  Length of sentence **13 years**      sentencing Judge  **Hon. Reena Raggi**

4.  Nature of offense or offenses for which you were convicted:
    **18 U.S.C. §§ 1962, 1951, 1955, 1956**

5.  What was your plea? (Check One)
    (a)    Not guilty ( )
    (b)    Guilty **(X)**
    (c)    Nolo contendre ( )
    If you entered a guilty plea to one count or indictment, and
    a not guilty plea to another count or indictment, give details:

6.  Kind of trial: **N/A**      (check one)

    (a)    Jury    ( )
    (b)    Judge only

7.  Did you testify at the trial?  Yes ( ) No ( )**N/A**

8.  Did you appeal from the judgment of conviction?
    Yes **(X)**   No ( )

9.  If you did appeal, answer the following:
    (a)    Name of the court  **United States Court of Appeals Second Circuit**

    (b)    Result  **Affirmed**
    (c)    Date of result  **unknown**

10. Other than a direct appeal from the judgment of conviction and sentence, have you
    previously filed any petitions, applications or motions with respect to this judgment in
    any federal court?  Yes ( ) No **(X)**

11. If your answer to 10 was "yes", give the following information:

    (a)    (1)    Name of court
           (2)    Nature of proceeding

           (3)    Grounds raised

           (4)    Did you receive an evidentiary hearing on your petition, application or

2

motion?
Yes ( ) No ( )

    (5)     Result

    (6)     Date of result

(b)    As to any second petition, application or motion, give the same information:

    (1)     Name of court
    (2)     Nature of proceeding

    (3)     Grounds raised

    (4)     Did you receive an evidentiary hearing on your petition, application or motion?
           Yes ( ) No ( )

    (5)     Result

    (6)     Date of result

(c)    As to any third petition, application or motion, give the same information:

    (1)     Name of court
    (2)     Nature of proceeding

    (3)     Grounds raised

    (4)  Did you receive an evidentiary hearing on your petition, application or motion?
           Yes ( ) No ( )

    (5)     Result

    (6)     Date of result

(d)    Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?

    (1)     First petition, etc.    Yes ( ) No ( )

3

        (2)     Second petition, etc.  Yes ( ) No ( )
        (3)     Third petition, etc.    Yes ( ) No ( )

    (e)     If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

12.     State <u>concisely</u> every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

    CAUTION:    If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

       For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, <u>you should raise in this motion all available grounds</u> (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

       If you select one or more of these grounds for relief, you must allege facts in support of the ground or grounds which you choose. Do not check any of the grounds listed below. The motion will be returned to you if you merely check (a) through (j) or any one of these grounds.

    (a)     Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.
    (b)     Conviction obtained by use of coerced confession.
    (c)     Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
    (d)     Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
    (e)     Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
    (f)     Conviction obtained by a violation of the protection against double jeopardy.
    (g)     Conviction obtained by a violation of the protection against double jeopardy.
    (h)     Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
    (i)     Denial of effective assistance of counsel.

    (j)     Denial of right of appeal.
           NOTE: If Movant asserts denial of effective assistance Of counsel (ground "I"), he <u>must</u> describe with particularly the factual basis for his claim (e.g. lawyer failed to raise insanity defense), <u>and</u> he must describe the prejudice allegedly suffered as a result of the denial of effective assistance of counsel (e.g., convicted of crime that Movant lacked the mental capacity to commit).

**A.** Ground One: **Whether the Bureau of Prisons erred in failing to award credit to the sentence of the prisoner under 18 U.S.C. §3585(b) for time served for the same conduct for which this sentence was enhanced to meet the agreed upon sentence, pursuant to Rule 11 (e)(1)( C), but not charged in the indictment, when prisoner did not receive credit for service of that time on any other sentence?**

Supporting FACTS (tell your story briefly without citing cases or law): **See attached Memorandum of Law.**

**B.** Ground Two:

Supporting FACTS (tell your story briefly without citing cases or law):

**C.** Ground Three:

Supporting FACTS (tell your story briefly without citing cases or law):

**D.** Ground Four:

Supporting FACTS (tell your story briefly without citing cases or law):

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give you reasons for not presenting them: **This kind of decision is within the authority and jurisdiction of the Bureau of Prisons.**

14.

15. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ( ) No (**X**)

16. Give the name and address, if known, of each attorney who represented you in the

5

following stages of the judgment attacked herein:

(a)    At preliminary hearing    **Barry Levin, Garden City, New York**

(b)    At arraignment and plea **Barry Levin, Garden City, New York**

(c)    At trial    **N/A**

(d)    At sentencing    **Barry Levin, Garden City, New York; Dale Smith Brooklyn, New York.**

(e)    On appeal   **Dale Smith, Brooklyn, New York**

(f)    In any post-conviction proceeding

(g)    On appeal from any adverse ruling in a post-conviction Proceeding

17.    Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?  Yes (**X**) No ( )

18.    Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ( ) No (**X**)

(a)    If so, give name and location of court which imposed sentence to be served in the future:

(b)    And give date and length of sentence to be served in future:

(c)    Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ( ) No ( )

Wherefore, movant prays that the court grant him all relief to which he may be entitled in this proceeding.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on

(Date)

Respectfully submitted,

6

Linda S. Sheffield
GA Bar number 639725, LS 5200
10 Glenlake Parkway, Suite 130
Atlanta, GA 30328
(404) 329-1911 Telephone
(678) 222-3401 Facsimile
lshef@mindspring.com

*Attorneys for Alphonse Persico*

7

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**ALPHONSE PERSICO,**

                    **CIVIL ACTION NO. _____**

           **Petitioner,**

- against -

**PAUL LAIRD, Warden, MDC Brooklyn,**

           **Respondent.**

_____X

## MEMORANDUM OF LAW AND INCORPORATED APPENDIX IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS 28 U.S.C.§2241

Comes now, Alphonse Persico, by and through undersigned counsel, and moves this Honorable Court for relief, as follows:

### PARTIES

Alphonse Persico is a prisoner in custody pursuant to a judgment of a court of the United States. He is in custody in violation of the U.S. Constitution. Alphonse Persico was designated to serve his sentence at FCI Fairton, New Jersey but is being held in the Metropolitan Detention Center Brooklyn, New York awaiting trial in case number 04-cr-0056(SJ).

Paul Laird is the Warden of MDC Brooklyn, New York, and is the custodian of those designated to serve sentences in that institution. Further, it is an act performed

1

by the Bureau of Prisons staff which is at issue in this filing.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §2241.This Court has jurisdiction of this petition because it is a condition of incarceration imposed on this petitioner, in violation of the laws of the United States Supreme Court and the United States Constitution, which the Federal Bureau of Prisons has failed to rectify, about which this petitioner complains and seeks relief, which falls under 28 U.S.C. §2241(c)(3). Petitioner has exhausted his administrative remedies. (Exhibit ____) Further, Petitioner is incarcerated within the territorial jurisdiction of this Court.

## ISSUE

**Whether the Bureau of Prisons erred in failing to award credit to the sentence of the prisoner under 18 U.S.C. §3585(b) for time served for the same conduct for which this sentence was enhanced to meet the agreed upon sentence, pursuant to Rule 11 (e)(1)( C), but not charged in the indictment, when prisoner did not receive credit for service of that time on any other sentence?**

## STATEMENT OF FACTS

Alphonse Persico was indicted in case number 92-351(S-10 (CPS), went to trial and was acquitted of all counts. One of the racketeering acts under 18 U.S.C. §1962 ( c), (d) was the murder Persico's brother-in-law, Steven Piazza. The jury found that Persico committed that racketeering act, but did not find he committed a second racketeering act, which resulted in his acquittal of all counts on August 8, 1994.

2

Persico remained in custody throughout pre-trial and trial proceedings in that case, never making bail. He did not receive credit for the time he served on the charge resulting in acquittal on any sentence.

Subsequently, Persico was indicted in the instant case, 01-0056(RR), and entered in to a plea agreement pursuant to F.R.Cr.P. Rule 11 (e)(1)( C), agreeing to a 13 year sentence, provided the government could justify the sentence under the sentencing guidelines. Once Persico entered the custody of the Bureau of Prisons to serve the 13 year sentence, he took steps, by filing his administrative remedies, to seek credit for the time served which was never credited to any sentence. Persico presented evidence to the Bureau of Prisons that he received the 13 year sentence due to evidence relied upon by the district court that he was found by proof beyond a reasonable doubt to have criminal responsibility for the murder of Steven Piazza. See BP-11 administrative remedy with 11/14/03 letter from Amy Walsh attached, page 3, which states:

> As was revealed in testimony before the Court, both parties believed that the guidelines range was below 13 years, and that a Rule 11 (e)(1)( C) plea would require an upward departure based on the defendant's participation in the murder of his brother-in-law [Steven Piazza].

## ARGUMENT

3

It is well established that a §2241 petition is the appropriate vehicle to challenge the correctness of a jail time credit determination, once administrative remedies have been exhausted.  See *Rogers v. United States*, 180 F. 3d 349 (1st Cir. 1999).

**18 U.S.C. § 3585 states**:

**(b) Credit for Prior Custody**. - A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date sentence commences--

(1) as a result of the *offenses for which the sentence was imposed*;

(2) as a result of *any other charge* for which the defendant was arrested after the commission of the offense for which the sentence was imposed; (emphasis supplied)

that has not been credited against another sentence.

Persico was released from the custodial portion of his old law sentence on May 12, 1993 and remained in custody until his acquittal on August 8, 1994.  None of that time was credited to his custodial or parole term.

<u>**Facts which caused Persico's incarceration**</u>

**<u>1993-1994 92-351(S-10 (CPS)</u>**                          **<u>CurrentCase 01-0056(RR)</u>**

**Time period**                                                              **Time period**
 1985 up to and including 5/13/93                     11/93 - 4/19/01 Count One 01-
                                                                                 0056(RR)
(paragraph 13, Count One, p. 4

4

92-351(S-10) (CPS)

**Statute Violated**
18 U.S.C. § 1962 (c)(d), § 1959

**Role: Captain**

**Statute Violated**
18 U.S.C. §§ 1962, 1951, 1955, 1956
and others

**Role: at times soldier, captain, acting boss**


**Acts Alleged**

RICO (NG

Murder Steven Piazza (G)

Conspiracy to Murder Orena Faction (NG)

Murder Vincent Fusaro (NG)

Murder Nicholas Grancio (NG)
Murder John Minerva (NG)
Murder Michael Imbergamo (NG)
Murder Lorenzo Lampesi (NG)
Att. Murder Cacace (NG)
RICO Conspiracy same acts (NG)
Conspiracy to Murder § 1959 (NG)

**Acts Alleged**

Piazza Murder used to enhance sentence to 13 years
    Racketeering  11/93  -  4/99 (consp. & sub.)
    Loansharking  11/93  -  10/99 (c&s)
    Money laundering 11/93 - 10/99 (c&s)
Extortion 5/26/99 - 6/00 (c&s)


Alphonse Persico entered a plea agreement to the indictment, however, it is undisputed that the 13 year sentence he agreed upon would be allowed *only* because of the offense of the murder of his brother-in-law, which would support an upward adjustment to the 13 years. Over 40 months were added to Persico's sentence because of the Piazza murder.

Persico was in official detention while awaiting and during trial in 1993 and

5

1994, preceding his acquittal on all counts on August 8, 1994. The arrest and detention in 92-351(S-10) (CPS) took place after the alleged commission of the offense (Piazza murder), and prior to his arrest on the charges resulting in the sentence he is now serving. The Piazza murder was one of the charges for which he was held in official detention, and it was the only act charged upon which the jury found he committed by proof beyond a reasonable doubt. Further, at the time of the sentence enhancement for the Piazza murder, in order to impose the 13 year sentence, it was the only act outside of the indictment the court was legally able to consider as support for the enhancement, since a jury had previously made a finding utilizing the heightened burden of proof now required by law.

For Persico to be permitted to resolve the case in a plea of guilty, he was required to agree to a term of years which was greater than the sentencing guidelines for the underlying crimes charged in the indictment. To achieve the desired sentence, it was necessary for the government to include in the sentence, the offense of the Piazza murder, and as a result it became part of the offense for which the current sentence is based. In fact, without the inclusion of that offense, the sentence would have been substantially less. As a result, the terms of 18 U.S.C. § 3585 come into play, since Persico served over a year in prison before being acquitted of the charges for that same offense. The BOP should have credited the time he served for that

6

offense resulting in an acquittal.

Persico's BP-9 denied by Warden Jonathan C. Miner, because "the time period you allege should be credited is not an overt act of the conspiracy for which you are currently convicted and incarcerated for. The case for which you were acquitted was considered by the sentencing court simply for guideline purposes. Any part of your criminal history can be used to increase or decrease a sentencing range. However, the inclusion of that consideration into a guideline calculation does not make the prior conduct and offense a part of your current conviction for prior custody application." Warden Miner is wrong. As a result of the sentencing guidelines and *Apprendi v. New Jersey*, the sentencing process has changed. Warden Miner's interpretation of the process involved in this inmate's sentencing is flawed, and the application of the statute 18 U.S.C. § 3585 is, as a result, unlawful.

The BOP, at the Regional level, declined to credit the time served under 18 U.S.C. §3585(b) because the Regional Director erroneously found that "[t]he period of time spent in confinement on the case you were acquitted was not a result of the offense for which the current sentence was imposed." That is an erroneous statement of the facts and the law. The Central office confirmed the findings below.

The Bureau of Prisons is relying on the previous version of 18 U.S.C. §3585 - §3568 - in finding that the offenses must be identical. Section 3568 required that

7

credit be given only for time spent in official detention in connection with the offense or acts for which the sentence was imposed. When the statute was amended in 1987, Congress enlarged the class of defendants eligible to receive credit for time in official detention. Under the new law, a defendant may receive credit both for this time, and for the time spent in official detention in connection with "any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed." See 18 U.S.C. §3585(b). It should be noted that Persico's situation actually satisfies either statute - old or new - since the Piazza murder charge  resulted the confinement in both cases.

This statute is mirrored in Program Statement 5880.28, Sentence Computation Manual concerning the award of prior custody.

Persico spent time in "official detention"[1], prior to the date the sentence commenced, as the result of an offense for which this sentence was imposed. A jury convicted Persico of a racketeering act, which was insufficient to convict him under the racketeering statute charged, but which was a jury finding, and which Judge Raggi used to support the sentence enhancement in the 2003 offense  of conviction. The

---

[1]"'Official detention' is defined, for purposes of this policy, as time  spent under a federal detention order." PS 5880.28, 2/14/97 Page 1-14F.  Persico completed his prior federal sentence on May 12, 1993, at which time he was taken into custody on the charges in 92-351(S-10) (CPS).  He was held under a detention order by the honorable Charles Sifton, and was not released until his August 8, 1994 acquittal.

8

sentence imposed is the result of the finding by proof beyond a reasonable doubt (now required by *Apprendi*, *Blakeley* and *Booker*) (and satisfied by the jury verdict, making it not simply a sentencing factor), an enhancement which could not have been lawfully imposed under *Apprendi*, *Blakeley* and *Booker* without a jury verdict, and is the result of the offense for which the sentence Persico is now serving was imposed. The BOP must acknowledge and recognize the fact that Persico is serving a sentence for the racketeering act the jury found he committed in 1994, which did not result in a conviction, but which constituted the necessary proof beyond a reasonable doubt authorizing Judge Raggi to impose an enhanced sentence. As a result, Persico must receive credit for the period of time, over a year of incarceration that he served in 1993 and 1994, for the charges that resulted in the enhancement to meet the agreed upon sentence, which has not been credited to the sentence he is serving, and which caused a substantial period of years to be added to the sentence for the offense of conviction.

## CONCLUSION

The requested credit is for the offense for which the sentence was imposed, and it must be recognized and credited. The petition for writ of habeas corpus must be granted.

Respectfully submitted,


Linda S. Sheffield
GA Bar number 639725, LS 5200
10 Glenlake Parkway, Suite 130
Atlanta, GA 30328
(404) 329-1911 Telephone
(678) 222-3401 Facsimile
lshef@mindspring.com

*Attorneys for Alphonse Persico*

**Administrative Remedy No. 347639-A1**
**Part B - Response**

RECEIVED

DEC 15 2004

FCI FAIRTON
WARDEN'S OFFICE

This is in response to your Central Office Administrative Remedy
Appeal in which you request an additional award of credit toward
your federal sentence pursuant to Title 18 U.S.C. 3585(b).
Specifically, from May 28, 1993, through August 8, 1994.

You provide no new information in this matter beyond that which
you supplied in your Request for Administrative Remedy at the
institution and regional levels.  The Bureau of Prisons computed
your sentence as required by Program Statement 5880.28, <u>Sentence
Computation Manual - CCCA</u> and all applicable statutes.

Your appeal is denied.

_December 6, 2004_
_____
Date

Harrell Watts, Administrator
National Inmate Appeals

U.S. Department of Justice

Federal Bureau of Prisons

Central Office Administrative Remedy Appeal

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: **PERSICO, ALPHONSE, T.**    **05517-054**    **B-LEFT**    **F.C.I. FAIRTON**
     LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

**Part A—REASON FOR APPEAL**

Alphonse Persico appeals the denial of his BP-10, denying his request for credit on the sentence he is serving for time he served on an indictment charging, inter alia, the murder of Steven Piazza, resulting in an acquittal. The BOP declined to credit the time served under 18 U.S.C. Section 3585(b) because the Regional Director erroneously found that "[t]he period of time spent in confinement on the case you were acquitted was not a result of the offense for which the current sentence was imposed." That is an erroneous statement of the facts and the law, and the time must be credited."

SEE ATTACHED SHEET

_____       *Alphonse Persico*
          DATE                                    SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____                      GENERAL COUNSEL
          DATE                                CASE NUMBER: _____

THIRD COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE

**Part C—RECEIPT**

                                                   CASE NUMBER: _____

Return to: _____
                 LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____                                                                                                                                                                         
          DATE                                SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL       BP-231(13)

WARDEN'S OFFICE

PERSICO, Alphonse T.
Reg. No.: 05517-054
HBL

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: *PERSICO, ALPHONSE T.*      *05577-054*      *B-LEFT*      *F.C.I. FAIRTON*
    LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A—REASON FOR APPEAL**

  Alphonse Persico appeals the denial of his BP-10, denying his request for credit on the sentence he is serving for time he served on an indictment charging, inter alia, the murder of Steven Piazza, resulting in an acquittal. The BOP declined to credit the time served under 18 U.S.C. Section 3585(b) because the Regional Director erroneously found that "[t]he period of time spent in confinement on the case you were acquitted was not a result of the offense for which the current sentence was imposed." That is an erroneous statement of the facts and the law, and the time must be credited.



  SEE ATTACHED SHEET


*10/25/04*                                        *Alphonse Persico*
    DATE                                          SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____
    DATE                                          GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                        CASE NUMBER: _____
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**Part C—RECEIPT**
                                                  CASE NUMBER: _____

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

**Alphonse Persico, Reg. No. 05517-054, BP-11 Appeal No. 347639-R1 (BP-11 Continued)**

In a letter dated November 14, 2004, the Assistant United States Attorney wrote to the sentencing Judge, The Honorable Reena Raggi, stating, "As was revealed in testimony before the Court, both parties believed that the guidelines range was below 13 years, and that a Rule 11 (e)(1)(c) plea would require an upward departure based on the defendant's participation in the murder of his brother-in-law [Steven Piazza]."

Alphonse Persico entered a plea agreement to the indictment, however, it is clear that the 13 year sentence he agreed upon would be allowed *only* because of the offense of the murder of his brother-in-law, which would support an upward adjustment to the 13 years. Over 40 months were added to Persico's sentence because of the Piazza murder. See attached letter from Assistant United States Attorney, Amy Walsh.

For Persico to be permitted to resolve the case in a plea of guilty, he was required to agree to a term of years which was greater than the sentencing guidelines for the underlying crimes charged in the indictment. To achieve the desired sentence, it was necessary for the government to include in the sentence, the offense of the Piazza murder, and as a result it became part of the offense for which the current sentence is based. In fact, without the inclusion of that offense, the sentence would have been substantially less. As a result, the terms of 18 U.S.C. § 3585 come into play, since Persico served over a year in prison before being acquitted of the charges for that same offense. It is unlawful for a person to serve time twice for the same offense. The BOP must credit the time served.



U.S. Department of Justice

*United States Attorney.*
*Eastern District of New York*

MEF:ALW
F.#1999R01685

*156 Pierrepont Street*
*Brooklyn, New York 11201*

November 14, 2003

<u>By Hand</u>

The Honorable Reena Raggi
United States District Judge,
Sitting By Designation
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

          Re:   United States v. Alphonse Persico
                <u>Criminal Docket No. 01-056 (S-3)(RR)</u>

Dear Judge Raggi:

          The government submits this letter in response to the
defendant's "Position Re Sentencing," dated November 7, 2003.

          The government agrees with the defendant's first point,
that if the Court wished to sentence him to more than 13 years,
he would have to be given the opportunity to withdraw his guilty
plea.  <u>See</u> Plea Agreement ¶ 2 (attached as Exhibit 1); Fed. R.
Cr. P. 11(c)(5).

          The government disagrees with the defendant's assertion
that the government breached the plea agreement.  According to
the defendant, because the plea agreement refers to the
possibility that the stipulated sentence could be below the
applicable guidelines range, and because such a scenario would
require the government to make a motion for downward departure,
the government promised to make a motion for a downward departure
and has breached the plea agreement by not making such a motion.
Based on the plain language of the agreement this logic fails.

          The paragraph of the plea agreement cited by the
defendant is conditional:

          In the event the agreed-upon sentence is above or below
          the adjusted offense level under then Sentencing
          Guidelines calculated by the Court, the defendant and

2

the office consent to a departure to 156 months and the office will inform the Court at the time of sentencing why the departure is justified.

Plea Agreement ¶ 2. The condition that would obligate the government to make a motion for a downward departure would be if the stipulated sentence were below the applicable guidelines range. Here, that is not the case. The stipulated sentence of 13 years is above the guidelines range. Pursuant to the agreement, therefore, the government must make a motion for an upward departure in order to justify a sentence of 13 years. The government has made such a motion, and accordingly, has complied with its obligations under the plea agreement.

The defendant's further representation that "the parties expectations were that the government would advocate for a downward departure" is belied by the defendant's criminal background and the negotiations leading up to his guilty plea. As was revealed in testimony before the Court, both parties believed that the guidelines range was below 13 years, and that a Rule 11(e)(1)(C) plea would require an upward departure based on the defendant's participation in the murder of his brother-in-law. See Transcript of Hearing, June 4, 2003, at 13-17, 124-25, 192-93 (excerpts attached as Exhibit 2).

The government declines to address the defendant's remaining arguments, as they relate to his prior motions to withdraw his guilty plea and arguments that he could have made to a jury if he had not pled guilty.

Respectfully submitted,

ROSLYNN R. MAUSKOPF
United States Attorney

By:  Amy Walsh
Assistant U.S. Attorney

cc:  Barry Levin, Esq.
     Dale Smith, Esq.
     Clerk of the Court (RR)

**PERSICO, Alphonse**
Reg. No. 05517-054
Appeal No. 347639-R1
Page One

---

### Part B - Response

---

You appeal the decision of the Warden at FCI Fairton to deny you prior custody credit from May 28, 1993, through August 8, 1994. You contend this period was related to your current offense, was considered by the Court during sentencing as such, and should be considered as jail credit under 18 U.S.C. §3585(b).

A review of your appeal revealed you were sentenced in the U.S. District Court for the Eastern District of New York on November 21, 2003, to 156-months to run concurrent on each count, for Racketeering, Conspiracy to Engage in Racketeering, Racketeering Through Collection of Unlawful Debt, Conspiracy to Collect Extensions Credit by Extortionate Means and Conspiracy to Launder Monetary Instruments. From May 28, 1993, through August 8, 1994, you were in custody pending charges, for which you were later acquitted.

Prior custody credit in governed by 18 U.S.C. §3585(b), which states "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior ti the date the sentence commences (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence." The period of time spent in confinement on the case you were acquitted was not a result of the offense for which the current sentence was imposed. The Courts consideration of this offense for guideline purposes has no effect on your computation or the awarding of prior custody credit. Therefore it cannot be awarded pursuant to 18 U.S.C. §3585(b)(1). This time may also not be awarded under 18 U.S.C. §3585(b)(2), since this time was before the date of offense of the current commitment. This date of offense has been determined as April 19, 2001, in accordance with Program Statement 5880.28, Sentence Computation Manual-CCCA, which states the date of offense for ongoing criminal activity is the date the criminal activity ends. Your sentence is computed correctly. Your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administration Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

Date: September 28, 2004

D. SCOTT DODRILL
Regional Director

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

| From: | Persico, Alphonse | 05517-054 | B-Left | FCI Fairton |
|-------|-------------------|-----------|--------|-------------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

Part A—REASON FOR APPEAL

I am appealing the denial of my BP-9 denied by Warden Jonathan C. Miner, because "the time period you allege should be credited is not an overt act of the conspiracy for which you are currently convicted and incarcerated for.  The case for which you were acquitted was considered by the sentencing court simply for guideline purposes.  Any part of your criminal history can be used to increase or decrease a sentencing range. However, the inclusion of that consideration into a guideline calculation does not make teh  prior conduct and offense a part of your current conviction for prior custody application."  Warden Miner is wrong, and his decision should be reversed.

See Continuation Sheet - 1 page attached.

| 8/30/04 | _Alphonse Persico_ |
|---------|--------------------|
| DATE | SIGNATURE OF REQUESTER |

Part B—RESPONSE

| | |
|--|--|
| DATE | REGIONAL DIRECTOR |

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

Part C—RECEIPT

CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

Alphonse Persico, Reg. No. 05517-054, FCI Fairton B-Left, BP-10
BP-10 Continued

As a result of the sentencing guidelines and *Apprendi v. New Jersey*, the sentencing process has changed.  Warden Miner's interpretation of the process involved in this inmate's sentencing is flawed, and the application of the statute 18 U.S.C. § 3585 is, as a result, unlawful.

(b) Credit for Prior Custody. - A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date sentence commences--

(1) as a result of the offenses for which the sentence was imposed;
(2) as a result of any other charge for which the defendant was arrested *after the commission of the offense for which the sentence was imposed*; (emphasis supplied)

that has not been credited against another sentence.

This statute is mirrored in Program Statement 5880.28, Sentence Computation Manual concerning the award of prior custody.

Persico spent time in official detention, prior to the date the sentence commenced, as the result of an offense for which this sentence was imposed.  A jury convicted Persico of a racketeering act, which was insufficient to convict him under the racketeering statute charged, but which was a jury finding, and which Judge Raggi used to support the sentence enhancement in the 2003 offense of conviction.  The sentence imposed is the result of the finding by proof beyond a reasonable doubt (now required by *Apprendi*) (and satisfied by the jury verdict, making it not simply a sentencing factor), an enhancement which could not have been lawfully imposed under *Apprendi* without a jury verdict, and is the result of the offense for which the sentence Persico is now serving was imposed. The sentencing process is more complex now that *Apprendi* and *Blakely v. Washington* have been decided by the Supreme Court, and the warden must acknowledge and recognize the fact that Persico is serving a sentence for the racketeering act the jury found he committed in 1994, which did not result in a conviction, but which constituted the necessary proof beyond a reasonable doubt authorizing Judge Raggi to impose an enhanced sentence. As a result, Persico must receive credit for the period of time, over a year of incarceration that he served in 1993 and 1994, for the charges that caused time to be added to the current sentence, which has not been credited to the sentence he is serving, and which caused a substantial period of years to be added to the sentence for the offense of conviction.

The requested credit is for the offense for which the sentence was imposed, and it must be recognized and credited.

PERSICO, Alphonse
Register Number: 05517-054
Administrative Remedy Number: 347639-F1
Part B - Response

This is in response to your Request for Administrative Remedy, received in my office on August 13, 2004, in which you allege you should receive credit for time spent in custody from May 28, 1993, through August 8, 1994, based on the language in Title 18, U.S.C. 3585(b)(1). You request that this credit be granted to your current Federal sentence.

A review of your file shows on May 14, 1993, you were arrested on a Federal indictment in the Eastern District of New York charging Racketeering Conspiracy. At the time of the arrest, you were in service for an unrelated Federal sentence. You released from that sentence on May 28, 1993, however, you remained in custody pending prosecution on the Racketeering charges. On August 4, 1994, you were acquitted of the charge. Specifically, the jury found you guilty of Conspiracy to Murder; however, the full crime of Racketeering was not proven. You were released from custody after the acquittal.

On November 21, 2003, you were sentenced in the Eastern District of New York to 156-months on charges of Racketeering and Conspiracy. These types of offenses are considered ongoing, and a date of offense is determined on the date the actions end. In your case, the controlling date of offense is April 19, 2001. Program Statement 5880.28, Sentence Computation Manual, CCCA, provides instructions for the award of prior custody credits as follows.

> "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences,
>
> (1) as a result of the offense for which the sentence was imposed;
>
> Or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> That has not been credited against another sentence."

The time period that you allege should be credited is not an overt act of the conspiracy for which you are currently convicted and incarcerated for. The case for which you were acquitted was considered by the sentencing court simply for guideline purposes. Any part of your criminal history can be used to increase or decrease a sentencing range. However, the inclusion of that consideration into a guideline calculation does not make the prior conduct and offense a part of your current conviction for prior custody application.

PERSICO, Alphonse
Register Number: 05517-054
Administrative Remedy Number: 347639-F1
Page 2


Accordingly, your request for administrative remedy is denied.  If you are dissatisfied with this response, you may appeal to the Regional Director, Northeast Regional Office, U.S. Customs House - 7th Floor, 2nd and Chestnut Streets, Philadelphia, Pennsylvania 19106. Your appeal must be received in the Regional Office within 20 days from the date of this response.


_Jonathan C. Miner_
Jonathan C. Miner, Warden

_8/23/04_
Date

U.S. DEPARTMENT OF JUSTICE                           REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Persico, Alphonse | 05517-054 | B-Left | FCI Fairton |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

Part A- INMATE REQUEST

    Alphonse Persico appeals the denial of his BP-229 dated July 30, delivered to him August 2, 2004, because the denial is based upon incorrect information and as a result an erroneous application of the law.

18 U.S.C. Section 3538 states:

(b) Credit for Prior Custody. –A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date sentence commences--

    (1) as a result of the offenses for which the sentence was imposed;
    (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.
(Continued next page)

August 11, 2004
DATE                              SIGNATURE OF REQUESTER

Part B- RESPONSE

8/23/04
DATE                              WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE              CASE NUMBER: 347659-F1

CASE NUMBER: _____

Part C- RECEIPT

| Return to: | | | | |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

DATE                            RECIPIENT'S SIGNATURE (STAFF MEMBER)      BP-229(13)

BP-9 of Alphonse Persico, Reg. No. 05517-054, Unit B-Left, continued.

Persico was released from the custodial portion of his old law sentence on May 28, 1993 and remained in custody until he was acquitted of all charges on August 8, 1994. None of that time in custody was credited to his custodial or parole term.

### Facts which caused Alphonse Persico's incarceration

**1993-1994**
**Time period**
 1985 up to and including 5/13/93
(paragraph 13, Count One, p. 4
92-351(S-10 (CPS)

**Current Case**
**Time period**
11/93 - 4/19/01 Count One 01-0056(RR)

**Statute Violated**
18 U.S.C. § 1962 (c)(d), § 1959
**Role: Captain**

**Statute Violated**
18 U.S.C. §§ 1962, 1951, 1955, 1956 and others
**Role: at times soldier, captain, acting boss**

**Acts Alleged**
RICO (NG
Murder Steven Piazza (G)
Conspiracy to Murder Orena Faction (NG)
Murder Vincent Fusaro (NG)
Murder Nicholas Grancio (NG)
Murder John Minerva (NG)
Murder Michael Imbergamo (NG)
Murder Lorenzo Lampesi (NG)
Att. Murder Cacace (NG)
RICO Conspiracy same acts (NG)
Conspiracy to Murder § 1959 (NG)

**Acts Alleged**
Piazza Murder used to support 13 year sent.
Racketeering 11/93 - 4/99 (consp. & sub.)
Loansharking 11/93 - 10/99 (c&s)
Money laundering 11/93 - 10/99 (c&s)
Extortion 5/26/99 - 6/00 (c&s)

PSR in the instant case stated, in paragraphs 112, 115 and 160, that the murder of Piazza, found by a jury in 1994 to have been a conspiracy Persico was part of which was insufficient in itself to convict him of the RICO count charged in the indictment, was used by the court in this case to justify the upward departure for a 13 year sentence. See sentencing transcript attached. The conduct for which Persico requests credit at this time, IS listed in his presentence investigation report and in his sentencing transcript, contrary to the finding of the response dated July 30, 2004 to the BP-229.

**Documents in support submitted with this filing:**

Sentencing Transcript CR-01-56, relevant pages 62 - 79.
Indictment 92-351
Sentence Computation Worksheets
PSR Cr-01-56 (to be read from the central file by unit team - see pages 42, 57 discussion Piazza murder in prior case and as an enhancement in current case.
PSR Cr-01-56 pages 39, 41 for offense severity and criminal history score, indicating the amount of time the Piazza murder added to the 13 year (156 month) sentence. Offense Level 24, criminal history Category IV, guidelines 77 - 96 months. Without § 3E1.1 (acceptance credit) would be level 26, guidelines 92 - 115 months.

As a result, credit should be granted and the decision of the BP-229 should be reversed.

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) | DATE: |
| *Ms. Kitka – ISM Office* | *7/12/04* |
| FROM: | REGISTER NO.: |
| *Alphonse Persico* | *05517-054* |
| WORK ASSIGNMENT: | UNIT: |
| *N/A* | *B – Left* |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

*I am requesting that I receive credit for time served
previously, from May 28, 1993 through August 8, 1994,
on my current sentence computation for the following reasons:
18 USC § 3585 states – in relevant part –*
    *(b) Credit for prior custody – A defendant shall be given
    credit towards the service of a term of imprisonment for any
    time he has spent in official detention prior to date sentence
    commences – – (1) as a result of the offenses for which the
    sentence was imposed.*
*[The conduct for which I was confined from May 28, 1993 – August 8, 1994
included the murder of Steven Piazza] I have not received credit for
this time served on any other sentence.*

(Do not write below this line)

DISPOSITION:

*See attached response*

| Signature Staff Member | Date |
| *(signature)* | *7/30/04* |

Record Copy – File; Copy – Inmate
(This form may be replicated via WP)            This form replaces BP-148.070 dated Oct 86

FAI 1330.13E
OCTOBER 31, 2002
Attachment 1

Federal Correctional Institution
and Federal Prison Camp
Fairton, New Jersey

ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES
INFORMAL RESOLUTION FORM

This form is to be completed by the Correctional Counselor.

DATE: 8/2/04

INMATE NAME: _ALPHONSE PERSICO_   REG. NO.: _05517-054_   UNIT: _B-LEFT_

1) THE INMATE'S COMPLAINT: _MY CURRENT SENTENCE COMPUTATION DATA HAS NOT GIVEN ME CREDIT FOR JAIL TIME - 5/28/93 thru 8/8/04. I AM SENTENCED FOR CONDUCT IN THE SENTENCE I AM CURRENTLY SERVING, WHICH WAS CHARGED IN THE INDICTMENT WHICH RESULTED IN AN ACQUITTAL, AND FOR WHICH I DID NOT RECEIVE CREDIT ON ANY OTHER SENTENCE, TO WIT: 5/28/03 - 8/8/04._

2) THE RELIEF HE IS REQUESTING: _THIS JAIL CREDIT SHOULD BE GIVEN TO ME PURSUANT TO 18 USC 3585, SINCE THE CONDUCT WAS USED TO ENHANCE MY GUIDELINE RANGE OF 92-115 MONTHS TO 156 MONTHS. THIS TIME HAS NOT BEEN CREDITED TO ANY OTHER SENTENCE._

3) EFFORTS MADE BY THE INMATE TO INFORMALLY RESOLVE THE COMPLAINT, INCLUDING THE NAMES OF STAFF HE CONTACTED: _BY WAY OF INMATE REQUEST OF STAFF ON 7/5/04 TO CASE MGR. NUNN WHO ADVISED ON 7/6/04 TO GO TO ISM OFFICE. ON 7/12/04 I WENT TO ISM OPEN HOUSE AND WAS TOLD I'D RECEIVE AN ANSWER TO MY REQUEST OF STAFF THROUGH THE INSTITUTIONAL MAIL. TO DATE I HAVE NOT RECEIVED ANY ANSWER FROM ISM._

4) EFFORTS MADE BY STAFF TO INFORMALLY RESOLVE THE COMPLAINT: _To be given credit for jail time must be incarcerated for your current offense_

DATE INFORMALLY RESOLVED _____

OR DATE BP-229 WAS ISSUED _8/2/04_

July 30, 2004

Response to Inmate Request to Staff

TO:        PERSICO, Alphonse
                Reg. No. 05517-054

This is in response to your correspondence dated July 12, 2004, in which you request jail credit for time served in relation to a 1993 Racketeering case in which you were acquitted. You state that your sentencing Judge took offense conduct from that case into account when giving you an upward departure from the sentencing guidelines on your current federal sentence.

18 USC 3585(b)(1) specifically states

> "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date sentence commences *as a result of the offense for which the sentence was imposed...*"

The fact that the Judge used circumstances from a prior trials opinion to depart for sentencing does not constitute the application of jail credit for an unrelated offense that occurred prior to the date of the instant offense. It is apparent that your current sentence was not imposed as a result of the offense conduct that was considered during sentencing, as it is not listed in your current presentence investigation as part of your current offense conduct. Therefore, this time would not be eligible as jail credit on your current sentence.

I trust this addresses your concerns.

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                                    L BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| D. NUNN - CASE MGR. | July 5, 2004 |
| FROM: | REGISTER NO.: |
| ALPHONSE PERSICO | 05517-054 |
| WORK ASSIGNMENT: N/A | UNIT: B-L |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

THANK YOU FOR SUPPLYING ME WITH A COPY OF MY SENTENCE COMPUTATION
DATA-SHEET. AFTER REVIEWING IT AND OTHER PAPERS I HAVE IN MY
POSSESSION I FIND THERE MAY BE AN ERROR ON THE AMOUNT OF "JAIL CREDIT"
I AM ENTITLED TO RECEIVE. MY QUESTION TO YOU IS ON HOW DO I GO
ABOUT RESOLVING THIS. DO I SEE YOU AND DISCUSS + PRESENT THE
RELEVANT PAPERWORK? DO I GO TO THE ISM DEPT.? DO I START THE
ADMINISTRATIVE REMEDY PROCESS - BP-8 OR 8½; THEN B-P-9 ETC.
IF IT IS NOT TOO MUCH TROUBLE WOULD YOU PLEASE ADVISE ME AS TO
THE BEST WAY TO APPROACH AND RESOL THIS "POSSIBLE" DISCREPANCY.
THANK YOU.

(Do not write below this line)

DISPOSITION:

ISM Records office handles your
Computation. You a need to see
them during open house Monday 11-11:45a.
or see Ms. Kitka during mainline.
to aaakss your concern.

| Signature Staff Member | Date |
|---|---|
| D. Nunn, CSW | 7-6-04 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)                This form replaces BP 148 070 d t d

```
MIAQ4   540*23  *            SENTENCE MONITORING            *      10-10-2000
PAGE 001        *            COMPUTATION DATA               *      10:45:08
                                AS OF 10-10-2000
```

REGNO..: 05517-054 NAME: PERSICO, ALPHONSE T

```
FBI NO...........: 845172AA6          DATE OF BIRTH: 02-08-1954
ARS1.............: MIA/A-DES
UNIT.............: E                  QUARTERS.....: E02-028U
DETAINERS........: NO                 NOTIFICATIONS: NO
```

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE: 01-24-2001 VIA GCT REL

----------------------CURRENT JUDGMENT/WARRANT NO: 020 -----------------------

```
COURT OF JURISDICTION...........: FLORIDA, SOUTHERN DISTRICT
DOCKET NUMBER...................: 4:99CR10001-001
JUDGE...........................: PAINE
DATE SENTENCED/PROBATION IMPOSED: 02-10-2000
DATE COMMITTED..................: 03-30-2000
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
```

| | FELONY ASSESS | MISDMNR ASSESS | FINES | COSTS |
|---|---|---|---|---|
| NON-COMMITTED.: | $100.00 | $00.00 | $40,000.00 | $00.00 |

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO     AMOUNT:  $00.00

-------------------------CURRENT OBLIGATION NO: 010 ---------------------------
OFFENSE CODE....:  136
OFF/CHG: 18:922(G)(1) FELON IN POSSESSION OF FIREARMS

```
SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.:    18 MONTHS
TERM OF SUPERVISION............:     3 YEARS
DATE OF OFFENSE................: 09-04-1998
```

```
  MIAQ4  540*23  *            SENTENCE MONITORING         *      10-10-2000
  PAGE 002           *        COMPUTATION DATA            *      10:45:08
                              AS OF 10-10-2000
```

REGNO..: 05517-054 NAME: PERSICO, ALPHONSE T


------------------------CURRENT COMPUTATION NO: 020 -------------------------

COMPUTATION 020 WAS LAST UPDATED ON 04-10-2000 AT MIA AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 020: 020 010

```
DATE COMPUTATION BEGAN..........: 02-10-2000
TOTAL TERM IN EFFECT............:    18 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:     1 YEARS        6 MONTHS

JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                     09-04-1998     09-05-1998
                                     02-18-1999     02-18-1999
                                     10-09-1999     02-09-2000

TOTAL PRIOR CREDIT TIME.........: 127
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT POSSIBLE..............: 70
TOTAL GCT AWARDED...............: 54
STATUTORY RELEASE DATE (CURRENT): 02-09-2001
SIX MONTH /10% DATE.............: 12-09-2000
EXPIRATION FULL TERM DATE.......: 04-04-2001


PROJECTED SATISFACTION DATE.....: 01-24-2001
PROJECTED SATISFACTION METHOD...: GCT REL
```




G0002       MORE PAGES TO FOLLOW . . .

```
MIAQ4  540*23 *          SENTENCE MONITORING          *    10-10-2000
PAGE  003        *          COMPUTATION DATA            *    10:45:08
                              AS OF 05-28-1993
```

REGNO..: 05517-054 NAME: PERSICO, ALPHONSE T

```
FBI NO...........:                    DATE OF BIRTH: 02-08-1954
ARS1.............: MIA/A-DES
UNIT.............: E                   QUARTERS.....: E02-028U
DETAINERS........: YES                 NOTIFICATIONS: NO
```

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  05-28-1993 VIA MAND REL

REMARKS........: CASE 92 CR 351 (S-9) USDC E/NY. CONSP TO RACKETEERING, MURDER
                 AND ASSAULT, AIDING & ABETTING THE USE OF FIREARMS CONN CRIMES

--------------------------PRIOR JUDGMENT/WARRANT NO: 010 --------------------------

```
COURT OF JURISDICTION...........: NEW YORK, SOUTHERN DISTRICT
DOCKET NUMBER...................: S84CR809(04)JFK
JUDGE...........................: KEENAN
DATE SENTENCED/PROBATION IMPOSED: 11-17-1986
DATE WARRANT ISSUED.............: N/A
DATE WARRANT EXECUTED...........: N/A
DATE COMMITTED..................: 12-13-1986
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
SPECIAL PAROLE TERM.............:
```

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00

--------------------------PRIOR OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  545
OFF/CHG: RACKETEERING CONSP; ENGAG IN RACK ENTERPRISE;BRIBERY
         TITLE 18-1962(D),1962(C),201(F),201(B)(3)

SENTENCE PROCEDURE.............: 4205(A) REG ADULT-ORIG TERM GRTR THAN 1YR
SENTENCE IMPOSED/TIME TO SERVE.:   12 YEARS

G0002      MORE PAGES TO FOLLOW . . .

Case 1:06-cv-02147-DLI    Document 1    Filed 05/09/06    Page 39 of 77 PageID #: 39

```
    MIAQ4   S40*23  *          SENTENCE MONITORING         *    10-10-2000
    PAGE 004 OF 004 *          COMPUTATION DATA            *    10:45:08
                               AS OF 05-28-1993
```

REGNO..: 05517-054 NAME: PERSICO, ALPHONSE T

-----------------------------PRIOR COMPUTATION NO: 010 -----------------------

COMPUTATION 010 WAS LAST UPDATED ON 05-28-1993 AT MIL AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 010:   010 010

```
DATE COMPUTATION BEGAN..........: 11-17-1986
TOTAL TERM IN EFFECT............:    12 YEARS
TOTAL TERM IN EFFECT CONVERTED..:    12 YEARS

JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                     04-25-1983     04-27-1983
                                     04-08-1985     04-09-1985
                                     06-13-1986     11-16-1986

TOTAL JAIL CREDIT TIME..........: 162
TOTAL INOPERATIVE TIME..........: 0
STATUTORY GOOD TIME RATE........: 10
TOTAL SGT POSSIBLE..............: 1440
PAROLE ELIGIBILITY..............: 06-07-1990
STATUTORY RELEASE DATE..........: 05-05-1994
TWO THIRDS DATE.................: 06-07-1994
180 DAY DATE....................: 12-09-1997
EXPIRATION FULL TERM DATE.......: 06-07-1998

NEXT PAROLE HEARING DATE........: N/A
TYPE OF HEARING.................: WAIVED

ACTUAL SATISFACTION DATE........: 05-28-1993
ACTUAL SATISFACTION METHOD......: MAND REL
ACTUAL SATISFACTION FACILITY....: MIL
ACTUAL SATISFACTION KEYED BY....: DWE

DAYS REMAINING..................: 1834
FINAL PUBLIC LAW DAYS...........: 2
```

G0000      TRANSACTION SUCCESSFULLY COMPLETED

```
   FAITR  540*23  *              SENTENCE MONITORING          *      06-09-2004
PAGE 002 OF 002  *              COMPUTATION DATA             *      07:50:01
                                 AS OF 06-09-2004
```

REGNO..: 05517-054 NAME: PERSICO, ALPHONSE


------------------------CURRENT COMPUTATION NO: 030 --------------------------

COMPUTATION 030 WAS LAST UPDATED ON 02-12-2004 AT FAI AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 030: 030 010

```
DATE COMPUTATION BEGAN..........: 11-21-2003
TOTAL TERM IN EFFECT...........:  156 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:   13 YEARS
EARLIEST DATE OF OFFENSE........: 04-19-2001

JAIL CREDIT.....................:  FROM DATE      THRU DATE
                                   01-25-2001     11-20-2003

TOTAL PRIOR CREDIT TIME.........: 1030
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 611
TOTAL GCT EARNED................: 162
STATUTORY RELEASE DATE PROJECTED: 05-24-2012
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 01-25-2014


PROJECTED SATISFACTION DATE.....: 05-24-2012
PROJECTED SATISFACTION METHOD...: GCT REL
```


G0000      TRANSACTION SUCCESSFULLY COMPLETED

```
FAITR  540*23  *              SENTENCE MONITORING              *    06-09-2004
PAGE 001         *             COMPUTATION DATA                *    07:50:01
                                AS OF 06-09-2004
```

REGNO..: 05517-054 NAME: PERSICO, ALPHONSE

```
FBI NO...........: 845172AA6           DATE OF BIRTH: 02-08-1954
ARS1.............: FAI/A-DES
UNIT.............: B                    QUARTERS.....: B01-112U
DETAINERS........: NO                   NOTIFICATIONS: NO
```

PRE-RELEASE PREPARATION DATE: 11-24-2011

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE: 05-24-2012 VIA GCT REL

-----------------------CURRENT JUDGMENT/WARRANT NO: 030 -----------------------

```
COURT OF JURISDICTION...........: NEW YORK, EASTERN DISTRICT
DOCKET NUMBER...................: CR01-056-04(S-5)(RR)
JUDGE...........................: RAGGI
DATE SENTENCED/PROBATION IMPOSED: 11-21-2003
DATE COMMITTED..................: 01-13-2004
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
```

```
                  FELONY ASSESS  MISDMNR ASSESS   FINES        COSTS
NON-COMMITTED.:   $600.00        $00.00           $00.00       $00.00
```

RESTITUTION...: PROPERTY: YES  SERVICES:  NO      AMOUNT: $00.00

------------------------CURRENT OBLIGATION NO: 010 ------------------------
OFFENSE CODE....: 545
OFF/CHG: 18:1962(C)&1963 RACKETEERING, RACKETEERING THRU COLLECTION OF
         UNLAWFUL DEBT 18:1963(D)&1963 CONS TO ENGAGE IN RACKETEERING
         18:894 CONSP TO COLLECT EXTENSIONS CREDT BY EXTORTIONATE MEANS
         18:1956(H) CONSP TO LAUNDER MONETARY INSTRUMENTS

```
SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.:   156 MONTHS
TERM OF SUPERVISION............:     3 YEARS
DATE OF OFFENSE................: 04-19-2001
```

G0002       MORE PAGES TO FOLLOW . . .

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - X
3
   UNITED STATES OF AMERICA,        :      CR 01-56
4
          -against-                 :      U.S. Courthouse
5                                          Brooklyn, New York
   ALPHONSE PERSICO,                :
6
               Defendant           :      Sentencing
7                                          November 21, 2003
   - - - - - - - - - - - - - X      9:00 A.M.
8  BEFORE:
             HONORABLE REENA RAGGI
9            United States District Judge

10 APPEARANCES:

11 For the Government:        ROSLYNN R. MAUSKOPF, ESQUIRE
                              United States Attorney
12                            One Pierrepont Plaza
                              Brooklyn, New York  11201
13                            BY:  AMY WALSH, ESQUIRE
                                   Assistant U.S. Attorney
14

15 For the Defendant:         DALE L. SMITH, ESQUIRE
                              164 Lafayette Avenue
16                            Brooklyn, New York 11238
                                   and
17                            BARRY LEVIN, ESQUIRE
                              666 Old Country Road
18                            Suite 406
                              Garden City, New York 11530
19

20

21 Court Reporter:            RONALD E. TOLKIN, RPR
                              225 Cadman Plaza East
22                            Brooklyn, New York  11201
                              (718) 260-2567
23

24 Proceedings recorded by mechanical stenography, transcript
   produced by Computer-Assisted Transcript.
25

                    RONALD E. TOLKIN, RMR
                    OFFICIAL COURT REPORTER

U.S.A. VS. ALPHONSE PERSICO

62

1          (Whereupon Judge Raggi takes the bench at 12:05
2     p.m.)

3          THE CLERK:  Second call, United States versus
4     Alphonse Persico.

5          MS. WALSH:  Amy Walsh, for the government.

6          MR. SMITH:  Dale L. Smith on behalf of Mr. Persico
7     along with Barry Levin.  Mr. Persico is present before the
8     Court.

9          THE COURT:  This is back on for sentencing.  I
10    adjourned so that the government could obtain information
11    about the homicide that it relies on as one ground for upward
12    departure.

13         MS. WALSH:  Yes, Your Honor.

14         Your Honor, I want to apologize to the Court for the
15    delay.  I should have been prepared to address this.

16         THE COURT:  That is all right.

17         MS. WALSH:  In any event, I have gotten the relevant
18    transcript testimony of John Pate.  Who was the cooperator in
19    that matter.

20         Essentially what happened was the defendant and Mr.
21    Pate met at a Cafe in 1935.  In the Spring or Summer of 1985
22    on Green Street in Manhattan.  The defendant told Mr. Pate
23    that he had a serious matter with his brother-in-law, and he
24    wanted Pate to look into it.

25         Pate understood this to mean that he wanted Mr. Pate

1   to kill Mr. Piazza on Mr. Persico behalf.  After a few weeks,

2   Pate lured Piazza to his brother Robert's house on Staten

3   Island and killed him by shooting him in the head and in the

4   chest.  Also present were Alan Quattrache and his brother

5   Robert Pate.  With the help of Quattrache and Pate they put

6   the body in a car.  I think it was Mr. Piazza's car and drove

7   the body to Brooklyn and left it there.

8           Later that evening Mr. Pate went to the defendant's

9   house on Staten Island and they had a discussion outside in

10  which Mr. Pate told Mr. Persico that "I took care of Stevie",

11  referring to Mr. Piazza.  Mr. Persico said "is everything

12  okay?"  In response to which Mr. Pate said "everything is

13  fine."

14          That is the sum and substance of the Mr. Pate's

15  testimony in the 1994 trial.  I have copies of the transcripts

16  for the parties and the Court.

17          THE COURT:  The jury found that the predicate that

18  Mr. Persico was involved in that homicide was proof beyond a

19  reasonable doubt?

20          MS. WALSH:  Yes.

21          THE COURT:  But because it found no other predicate

22  act we don't know what findings, if any, were made on the

23  other elements of racketeering.

24          Is that correct?

25          MS. WALSH:  That is correct.

U.S.A. VS. ALPHONSE PERSICO

64

1          THE COURT:  All right.  Now that I have some context

2    to this, does the defense wish to say anything about whether

3    or how this should factor into any upward departure?

4          Because I must say that the Court is not

5    particularly concerned or influenced by what Mr. Persico's

6    title may or may not be within organized crime.  Its focus is

7    on the conduct he has engaged in both as part of this offense,

8    as part of the offenses that have yielded other convictions,

9    and then in this rather unusual circumstance where I have a

10   jury finding of guilt beyond a reasonable doubt but only on a

11   predicate and not on a full crime, and I have to decide how to

12   factor these together.

13          Does the defense wish to be heard on this homicide?

14          MR. SMITH:  Yes.

15          MR. LEVIN:  Your Honor, if I may be heard very

16   briefly concerning the context in which the evidence came out?

17          In the transcript before the Court right now,

18   starting at page 200.

19          MS. WALSH:  Let me hand up a copy.

20          (Handing to the Court.)

21          THE COURT:  Are you going to try to argue whether he

22   should have been found guilty or not?

23          MR. LEVIN:  Well, Your Honor, I am just going to

24   make a very simple point.  Whether that activity was related

25   to the enterprise which is part of the government's submission

1  here.

2          THE COURT:  Well, I understand that and I will hear

3  you.  I guess I should warn the parties that it wouldn't

4  necessarily be determinative for me whether he had somebody

5  killed because it furthered the interests of the Colombo crime

6  family or whether he did it for personal reasons.

7          The fact of the matter is that than would indicate

8  that the man standing before me is someone willing to order

9  the death of another human being in addition to engaging in

10 loan-sharking, money laundering, being in possession of a

11 firearm, corrupting the judicial or the legal process as

12 evidenced by his 1995 conviction.

13         On top of all of that I would know that the man

14 standing before me was willing to order the murder of another

15 human being, whatever context.

16         MR. LEVIN:  If the context is irrelevant to Your

17 Honor's finding then I have no need to address it.  So that is

18 fine.

19         THE COURT:  Whatever you want.

20         Mr. Smith.

21         MR. SMITH:  No.  I have nothing to sa   Your Honor.

22         THE COURT:  The parties before me are  ere on an

23 agreed upon sentence.  Mr. Persico pleaded guil  , and I was

24 presented with an agreement between the parties  hat his

25 sentence should be 156 months in jail.

U.S.A. VS. ALPHONSE PERSICO                          66

1    Now, his guidelines would not call for that
2  sentence.  His guidelines as calculated by this Court would
3  call for a sentence of 92 to 115 months.  So just as the Court
4  when confronted with a guideline that is higher than the
5  agreed upon sentence must find a principal reason to depart
6  downward, I must find a principal reason to depart upward.
7    As I said, it is a somewhat curious situation
8  because the parties stand before me, in essence, saying by
9  their agreement that they think 156 months is warranted by the
10  facts and circumstances of this case.
11    Now, it is the government who has submitted a letter
12  brief as to why it things so.  I have indicated that many of
13  the factors that the government has emphasized would not by
14  themselves prompt me to upwardly depart.  As I said, I am not
15  particularly interested in what title Mr. Persico may hold
16  within the Colombo crime family.  That is not because I don't
17  think leadership roles are important.  I think it almost
18  dignifies organized crime with more than it merits to start
19  talking about people as if they held assigned positions here.
20    So that would not be a ground for upward departure.
21  The conduct that concerns me is the homicide and for the
22  reasons that I have just stated.  I know as I sentence Mr.
23  Persico for his racketeering activities, his admitted
24  racketeering activities, that this is the second time that he
25  is convicted for involvement in the Colombo organized crime

U.S.A. VS. ALPHONSE PERSICO

67

1   family.

2         I know that his activities on behalf of that family
3   have been wide ranging.  The loan-sharking and money
4   laundering activity that has been the crux of the present
5   conviction, then also evidenced by the corruption that was at
6   the heart of the 1985 conviction.  The fact that during the
7   interim, between the two convictions, Mr. Persico was found in
8   possession of a firearm.  All of this by itself would give a
9   Court tremendous concern about whether Mr. Persico is in the
10  truest sense of the word, not the formal sense, but the common
11  sense being the word, a career criminal.  Whether his life is
12  basically member in the Colombo organized crime family and the
13  furtherance all of his activities.

14        That by itself would give the Court pause as to
15  whether a criminal history category of four adequately
16  represents the risks that he presents to society.  But any
17  doubts that the Court has in its mind about that are removed
18  by the fact that in addition to all of these serious criminal
19  activities I have a jury verdict that Mr. Persico also engaged
20  in homicide.

21        It is difficult for me to distinguish between
22  homicides and view one as more serious than another.  They all
23  involve the taking of a human life.  But from what I have
24  heard just now, it is plain that this was a calculated
25  homicide.  This was not a response of hot blood or anything

1  like that.  As I said, I am not minimizing that but this was a
2  calculated homicide.
3          The fact that someone could take the life of another
4  human being on top of all of these other career criminal type
5  activities, suggests to me that Mr. Persico presents a real
6  serious danger to the community that is not adequately
7  represented by his history category of four.  The risk of
8  recidivism is the primary thing that criminal history
9  measures.  It is not adequately represented by criminal
10  history category four.
11          Now, the Court of Appeals has suggested that Courts
12  should do incremental step increases and try to see whether or
13  not each level would adequately deal with the concern.
14          A Level 26 at four, as I said, the range is 92 to
15  115 months.  At level five it is 110 to 137 months.  That
16  would be at the high end.  It is just over ten years.
17          Frankly, given that Mr. Persico was already
18  sentenced to what, a 12 year sentence the first time he was
19  engaged in racketeering?
20          MS. WALSH:  Yes, Your Honor.
21          THE COURT:  If that did not discourage him from
22  racketeering activity, including the activity that brings him
23  before the Court today, and then whether or not related to the
24  racketeering activity of the Colombo family, a homicide, the
25  Court has no questions about whether a ten year sentence is

U.S.A. VS. ALPHONSE PERSICO

69

1    enough to discourage Mr. Persico from his life of crimes.

2           So I find that one inadequate. That takes us up to

3    level six. Which at Level 26 would be a 120 to 150 months

4    term of incarceration. At the high end it is six months less

5    than the parties have agreed to.

6           At this point the Court has to say that the problem

7    is not the difference between 150 and 156 months. It is

8    whether 156 months adequately deals with the concerns that I

9    have articulated about Mr. Persico's life of crime. There may

10   be serious questions at this point about whether the Court

11   should sentence Mr. Persico at the maximum that the law allows

12   because, indeed, only a maximum sentence will protect the

13   public.

14          That suggests a very different type of question

15   about whether I should accept this plea agreement than the one

16   that has been before me. That is whether the plea agreement

17   is adequate to do justice in this case. But mindful of the

18   concerns that have animated the discussions with the attorneys

19   about questions of proof, the government always has those

20   questions when it has to assume a burden beyond a reasonable

21   doubt. Mindful that the parties themselves have engaged in

22   hard bargaining. I have no doubt that that was the case and

23   yet reached this sentence.

24          I am prepared to give Mr. Persico the benefit of

25   this sentence. Emphasizing again that my concern is not

RONALD E. TOLKIN, RMR
OFFICIAL COURT REPORTER

1 | whether it is too severe.  It is whether it is too lenient
2 | given the pattern of criminal activity that I have before me.
3 | So I accept the party's agreement.  I accept the decision by
4 | the defense and the prosecution that the appropriate sentence
5 | in this case is 156 months.
6 | That is what I intend to impose here.  But before I
7 | do that everybody does have an opportunity to comment once
8 | more and see if there is anything further that you wish to
9 | say.
10 | Is there anything more that the defense wishes to
11 | say?
12 | MR. SMITH:  Just briefly so that I can understand if
13 | I am asked later on.  Are you also making a departure
14 | vertically on the chart to get from the maximum 150 months to
15 | 156?
16 | THE COURT:  I think it is not really necessary.  It
17 | is working across the history points and finding that even six
18 | is not adequate.
19 | Is there something that you don't understand, Mr.
20 | Smith?
21 | MR. SMITH:  I understand the incremental departure
22 | upward, horizontally, to go from four, to five, to six.  But
23 | 156 is not within the range.
24 | THE COURT:  Because six is not adequate.  As I said,
25 | but for your agreement we would be talking seriously about

U.S.A. VS. ALPHONSE PERSICO

71

1   whether the sentence should be twenty years if not more given
2   that the Court would have the option for consecutive sentences
3   in this case.  Because I am not sure that anything other than
4   incarceration of Mr. Persico for the rest of his natural life
5   will discourage him from committing crimes.
6               As I said, I have an individual whose first criminal
7   conviction was for corrupting the legal system.  It was for
8   racketeering.  In essence, he was involved in bribery and
9   other activities in order to secure favorable treatment for
10  his father but all related to the Colombo organized crime
11  family.
12              Fifteen years later he is before the Court again,
13  involved in major ongoing criminal activity for the Colombo
14  organized crime family.  I am not sure and I can not assure
15  the public that when he gets out of jail for any sentence he
16  will not return to trying to serve the interest of the Colombo
17  organized crime family.  That is why I am not sure that even
18  the sentence that you have agreed on is adequate to deal with
19  the concerns that I have identified today, and why I don't
20  think six adequately represents the risk of recidivism that he
21  represents.
22              I think there is no crime that he wouldn't commit
23  whether it is murder, extortion, loan-sharking, weapons
24  possession, corruption of the judicial and legal process.  I
25  think there is no crime that he is not willing to commit.

1    Do you understand the Court's ruling now?

2    MR. SMITH:  No, I understand the Court's rationale.

3    THE COURT:  Yes.

4    MR. SMITH:  I just wanted clarification.  May be it

5    is not even required for you to say that to get to 156 I am

6    further upwardly departing from the 150 max to 156.

7    THE COURT:  I am because I would think about going

8    even higher than 156 but for your agreement.

9    MR. SMITH:  I understand, Your Honor.

10   THE COURT:  I don't find the sentences at either

11   range adequate to deal with the problems that I have

12   identified.

13   Is there anything else from the defense before I ask

14   Mr. Persico if he himself wishes to speak?

15   MR. SMITH:  No, Your Honor.

16   I am not going back but just to remind the Court,

17   and I know all of the decisions have been made.  To remind the

18   Court that I had forgotten that Mr. Salerno was actually

19   charged in this indictment and was an associate of the family.

20   To extent that his relationship were the same as all of the

21   other associates who were listed on the records as such.

22   I just wanted --

23   THE COURT:  I don't feel it is quite the same way.

24   I know Mr. Salerno pleaded guilty before me and was sentenced.

25   As I said, again, to return to the transcript of

U.S.A. VS. ALPHONSE PERSICO

73

1   2002. He is really in a hybrid situation where it was a short

2   trip from being a beneficiary of loan-sharking monies to

3   becoming the victim of an extortion scheme.

4            Mr. Persico, you don't have to say anything.  If you

5   would like to be heard before I impose sentence, I would be

6   pleased to listen to you.

7            THE DEFENDANT:  (No response.)

8            THE COURT:  Ms. Walsh, does the government wish to

9   be heard?

10           MS. WALSH:  Not on anything that you have said so

11  far.

12           I have a ministerial issue regarding the forfeiture.

13  I just wanted to let the Court know.

14           THE COURT:  Please do.

15           MS. WALSH:  If in your oral judgment you could make

16  the forfeiture amount part of the judgment, and if we could

17  attach the consent order of forfeiture to the written

18  judgment.

19           THE COURT:  Do you have a copy of that?

20           MS. WALSH:  Yes, I do.

21           MR. LEVIN:  Your Honor, since we are doing that I

22  would just also ask, and this is really ministerial at this

23  point.  Your Honor is aware of the fact that the money has

24  been paid.  That Your Honor makes a part of that judgment that

25  the forfeiture has been satisfied.  So we can have the liens

RONALD E. TOLKIN, RMR
OFFICIAL COURT REPORTER

removed from Mr. Persico's property.

THE COURT: Will you have to submit something to the Court to do that, Mr. Levin? Or how is that going to be effected?

MR. LEVIN: Well, the way I have done it in the past is if the Forfeiture Division of the U.S. Attorney's Office will just give us a satisfaction of judgment. I file them with the Clerk and I record them in the county where the properties are located.

THE COURT: Okay.

MR. LEVIN: If we can just get that on the record.

THE COURT: Ms. Walsh, do you want to hand up the document?

MS. WALSH: Yes, Your Honor.

(Handing to the Court.)

THE COURT: You just need this filed along with the judgment?

MS. WALSH: Correct, Your Honor.

THE COURT: Mr. Persico, you are before the Court to be sentenced on six crimes. Six crimes in which you were charged in this indictment.

I have no doubt that the reason that you pleaded guilty to all six crimes, in addition to the fact that you were guilty, was that in this way you sought to retain maximum protection for yourself from any subsequent prosecutions for

U.S.A. VS. ALPHONSE PERSICO

1    your involvement with the activities of the Colombo organized

2    crime family.

3            You and your lawyers, obviously, were looking to

4    protect yourself as much as possible and to the extent the law

5    permits you to secure that protection. My task now today is

6    to sentence you.

7            The case is a disturbing case, because it evidences

8    your persistent involvement in the activities of a very

9    dangerous organization. Which has had destructive effects on

10   the lives of so many people in this community and in this

11   district.

12           You were convicted once before for your activities

13   in the Colombo organized crime family. You served a lengthy

14   term of incarceration. Yet, it did not deter you from

15   returning to organized crime activities. As I noted when I

16   was calculating your guidelines, you were not out of jail two

17   years before you were found to possess records that indicate

18   in the strongest possible way that you were back in the

19   business.

20           Thereafter, the conduct that brings you before the

21   Court, the loan-sharking activity, the extortion activity,

22   which I once before described as the bread and butter of

23   organized crime, was it appears a main part of your activity.

24   The records that were found in your home spoke volumes. The

25   records that were found on your person spoke volumes.

1          In addition to this, though, I have to recognize
2   that you were not involved in extortion and money laundering
3   the way some people might be involved in trading stocks and
4   bonds.  You accompanied all of this with as your first
5   conviction showed, a willingness to corrupt the legal process
6   and more troubling to the Court you have been in possession of
7   these means of violence.  You have had guns in your
8   possession, and you have been willing to order death.  You
9   were willing to order at least the death of one other person.
10  All of this suggests to me you are a very dangerous man, and
11  that you deserve a lengthy term of incarceration.

12          But for the agreement you have with the government,
13  I would have a difficult difficult time deciding whether or
14  not to sentence you simply to the maximum that is provided for
15  racketeering or to start to think about consecutive sentences
16  for these crimes.

17          But I am satisfied from the submission of the
18  parties that for a variety of reasons worked out by the
19  parties in hard negotiations that the agreement that you have
20  reached, the bargain that you struck with the government is
21  one that you should be given the benefit of.

22          So I sentence you to the custody of the Attorney
23  General on each of the six counts of conviction to a term of
24  156 months.

25          Those terms will run concurrently with one another

1   all pursuant to the agreements of the parties.

2           On each of those counts of conviction you will also

3   be sentenced to three years of supervised release.  Those

4   terms will run concurrent to one another.

5           I impose a $100 special assessment on each count of

6   conviction as I am required to do by law.  Again, by law,

7   those must run consecutively.  So it is a $600 special

8   assessment.

9           I do not impose any fine in your case.  It is not

10  because you are without means.  You have considerable means.

11  Most of it, in my opinion, earned through your criminal

12  activities.  Because certainly your tax returns would not

13  support the forfeiture that you have already given.  I don't

14  want to get into that.  I don't want to try to calculate where

15  your money came from.  The point is you have forfeited

16  $1,000,000 as part of your plea agreement.

17          On balance I am satisfied that justice is served by

18  that forfeiture without a need for any further fine in the

19  case.  So I will not impose a fine.

20          To the extent that you think that I have made any

21  errors, you do have the right to appeal.

22          Does the plea agreement put any limitations on the

23  right to appeal?  I don't believe so.

24          MS. WALSH:  I think -- let me check.

25          MR. LEVIN:  Your Honor, the plea agreement does put

1 a restriction on our ability to challenge the suppression

2 motion.  But we certainly reserve the right to appeal Your

3 Honor's post-plea decisions to vacate the plea and --

4          THE COURT:  Of which there are many.

5          You have the right to appeal, Mr. Persico,

6 consistent with any limitations in your plea agreement.  Any

7 notice of appeal must be filed within ten days.

8          Since it is my understanding that the defendant will

9 wish to appeal, can I assume that counsel will take the

10 responsibility for filing a timely notice?

11          MR. SMITH:  Yes, Your Honor.

12          THE COURT:  Is there anything else?

13          MS. WALSH:  No, Your Honor.

14          THE COURT:  I will ask that the consent order of

15 forfeiture be attached to the Court's judgment.

16          I will also provide a copy to the Probation

17 Department so it can accompany the probation report.

18          MR. LEVIN:  Your Honor, would you also note in the

19 judgment that the consent order has been satisfied.

20          THE COURT:  Yes.

21          Ms. Walsh, you are ready to represent that, is that

22 correct?

23          MS. WALSH:  Yes, Your Honor.

24          THE COURT:  There will be no fine because of the

25 consent order of forfeiture.  A copy of which is attached, and

U.S.A. VS. ALPHONSE PERSICO                    79

1  which has been satisfied.

2          MR. LEVIN:  Thank you, Judge.

3          THE COURT:  Thank you all very much.

4          MR. LEVIN:  Thank you, Your Honor.

5          MR. SMITH:  Thank you, Your Honor.

6          MS. WALSH:  Thank you, Your Honor.

7          THE COURT:  Do you need your forfeiture back?

8          MS. WALSH:  Yes, Your Honor.

9          THE COURT:  We will make copies right now.

10          MS. WALSH:  If I can get copies right now.

11          THE COURT:  If you want to wait, we will get you

12  copies right now.

13          MS. WALSH:  Thank you, Your Honor.

14          (Whereupon this sentencing proceeding was

15  concluded.)

16

17

18

19

20

21

22

23

24

25

No. _____

# UNITED STATES DISTRICT COURT

EASTERN _____ District of ___NEW YORK____

_____CRIMINAL_____ _____ Division

## THE UNITED STATES OF AMERICA

vs.

ALPHONSE PERSICO, also known as "Allie Boy",

ET AL.

_____ Defendants.

S U P E R S E D I N G

## INDICTMENT

T. 18 U.S.C. 1962(c) and (d), 1959 (a)(1),
(3) and (5), 892, 894, 922(g)(1), 924 (a)(2),
924(c)(1), 2 and 3551 et seq.

_____

A true bill.

_____Caroline Wharton_____
Foreman

_____

Filed in open court this _____ day,

of _____ A.D. 19 _____

_____
Clerk

Bail $ _____

_____

GEORGE STAMBOULIDIS, AUSA, 330-7281

VC:GAS:EMC
F.# 9301777
PERSIIND.810

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA

   -against-

ALPHONSE PERSICO,
  also known as "Allie Boy,"
JOSEPH TOMASELLO,
  also known as "Joe T," and
RICHARD FUSCO,

          Defendants.

- - - - - - - - - - - - - - -X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 92-351 (S-10)(CPS)
(T. 18, U.S.C., §§ 1962(c) and
(d), 1959(a)(1), (3) and (5),
892, 894, 922(g)(1), 924(a)(2),
924(c)(1), 2 and 3551 et seq.)

THE GRAND JURY CHARGES:

## INTRODUCTION TO ALL COUNTS

      At all times relevant to this indictment, unless otherwise indicated:

### The Enterprise

      1.  The members and associates of the Colombo Organized Crime Family of La Cosa Nostra ("the Colombo Family") constituted an "enterprise," as that term is defined in Title 18, United States Code, Sections 1961(4) and 1959(b)(2), that is, a group of individuals associated in fact.  The Colombo Family is an organized criminal group that operates in the Eastern District of New York and other parts of the United States.  It engages in, and its activities affect, interstate commerce.

      2.  The head of the Colombo Family is known as the "Boss."  He is assisted by an "Underboss" and a counselor, who is known as the "Consigliere."  With their assistance, the Boss is

2

responsible for setting policy, resolving disputes among members
of the Colombo Family and resolving disputes between members of
the Colombo Family and members of other criminal organizations.

　　　　3.   Below these three highest-ranking members of the
Colombo Family is a group of "captains," who are also referred to
as "caporegimes" and "skippers."  Each captain is responsible for
supervising the criminal activities of his "crew."  Each crew
consists of "made" members of the Colombo Family, also referred
to as "soldiers" and "good fellows," and associates of the
Colombo Family.

　　　　4.   The Boss, Underboss and Consigliere of the Colombo
Family supervise, support, protect and discipline the captains,
soldiers and associates, and regularly receive reports regarding
their various activities.  In return for their supervision and
protection, the Boss, Underboss and Consigliere receive part of
the illegal earnings of each crew.

　　　　5.   The Colombo Family is part of a nationwide criminal
organization known by various names, including the "Mafia" and
"La Cosa Nostra," which operates through entities known as
"Families."  The ruling body of this nationwide organization was
known as the "Commission," the members of which included, from
time to time, the Bosses of the five New York City-based
Families, including the Boss of the Colombo Family.

　　　　6.   From time to time, the Colombo Family would propose
associates to be "made," that is, to become members of the
Colombo Family.  A list of these individuals would be circulated

to the other Families based in New York City.  Upon becoming
"made," each member would take an oath of omerta, vowing never to
reveal any information about the Colombo Family, its members or
its associates.

The Colombo Family Leadership

7.   Carmine ("Junior") Persico (hereafter "Persico")
has been the boss of the Colombo Family for more than 12 years.
In November 1986, however, and again in January 1987, Persico was
sentenced to a lengthy term of imprisonment.

8.   In May 1988, Persico selected Victor J. Orena to
assume the position of "acting boss" of the Colombo Family.
Orena has been a member of the Colombo Family for over 13 years,
and had been a captain for approximately one year before he
became the acting boss.

9.   The defendants ALPHONSE PERSICO, also known as
"Allie Boy," and RICHARD FUSCO, are captains in the Colombo
Family.  Since approximately Summer 1992, the defendant RICHARD
FUSCO has also been the acting consigliere of the Persico faction
of the Colombo Family.  The defendant JOSEPH TOMASELLO, also
known as "Joe T," is the acting boss of the Persico faction of
the Colombo Family.

The Purposes, Methods and Means of the Enterprise

10.   The principal purpose of the enterprise was to
generate money for its members and associates through various
criminal activities, including the operation of illegal gambling
businesses, the extortionate extensions and collections of

4

credit, and the generation of income from various businesses
through illegal means, including the exploitation of the Colombo
Family's corrupt control of union officials.  Among the methods
and means by which the members of the enterprise furthered its
criminal activities were the threatened and actual use of
violence, including murder.

11.   The members and associates of the Colombo Family
engaged in conduct designed to prevent government detection of
their identities, their illegal activities and the proceeds of
those activities.  That conduct included a commitment to
murdering persons, particularly members or associates of the
Colombo Family, who were perceived as potential witnesses against
members of the enterprise.

COUNT ONE
(Racketeering)

12.   Paragraphs one through eleven of this indictment
are realleged and incorporated as if fully set forth herein.

13.   From in or about 1985 up to and including May 13,
1993, both dates being approximate and inclusive, in the Eastern
District of New York and elsewhere, the defendants ALPHONSE
PERSICO, also known as "Allie Boy," JOSEPH TOMASELLO, also known
as "Joe T," and RICHARD FUSCO, together with others, being
employed by and associated with the Colombo Family, which
enterprise engaged in, and its activities affected, interstate
commerce, unlawfully, willfully and knowingly conducted and
participated, directly and indirectly, in the conduct of the
affairs of that enterprise through a pattern of racketeering

5

activity.  These defendants participated in the affairs of the
enterprise through the commission of multiple racketeering acts,
as set forth below.

### Racketeering Act One
### (Murder and Conspiracy to Murder-- Steven Piazza)

A.    Conspiracy to Murder

14.  In or about and between May 1, 1985 and June 13,
1985, both dates being approximate and inclusive, the defendant
ALPHONSE PERSICO, also known as "Allie Boy," together with
others, conspired to murder Steven Piazza, in violation of New
York Penal Law Sections 125.25 and 105.15.

B.    Murder

15.  On or about June 7, 1985, the defendant ALPHONSE
PERSICO, also known as "Allie Boy," together with others,
knowingly and intentionally murdered Steven Piazza, in violation
of New York Penal Law Sections 125.25 and 20.00.

### Introduction to Racketeering Acts Two through Eight:
### The Colombo Family Internal War

16.  In the months prior to June 1991, various members
and associates of the Colombo Family became increasingly
disenchanted with Orena. In addition, Orena announced his
intention to become the official boss of the Colombo Family.
Persico, however, wanted that position to be filled by his son,
the defendant ALPHONSE PERSICO, also known as "Allie Boy," who
was scheduled to be released from prison in 1993.  By June 1991,
a split between Persico and Orena escalated into an internal war
for control of the Colombo Family.  The war was between two

→ See pg # 6
of 3-9

6

factions.  One was aligned with the imprisoned Persico and the other with Orena.  Each faction formed armed "hit teams" to monitor the movements of the other faction and to assassinate its members and associates.  The hit teams used a variety of firearms to carry out numerous assassinations and assassination attempts.

17.  The defendants ALPHONSE PERSICO, also known as "Allie Boy," JOSEPH TOMASELLO, also known as "Joe T," and RICHARD FUSCO aligned themselves with the Persico faction and understood and intended that members of the Persico faction would attempt to kill members of the Orena faction.

See para. 15 ps. #6 + S-9

### Racketeering Act Two
#### (Conspiracy to Murder)

18.  In or about and between June 1991 and May 13, 1993, both dates being approximate and inclusive, the defendants ALPHONSE PERSICO, also known as "Allie Boy," JOSEPH TOMASELLO, also known as "Joe T," and RICHARD FUSCO, together with others, conspired to murder members and associates of the Colombo Family who were aligned with the Orena faction, in violation of New York Penal Law Sections 125.25 and 105.15.

### Racketeering Act Three
#### (Murder -- Vincent Fusaro)

19.  On or about December 6, 1991, the defendants ALPHONSE PERSICO, also known as "Allie Boy," and JOSEPH TOMASELLO, also known as "Joe T," together with others, knowingly and intentionally murdered Vincent Fusaro, a member of the Orena faction of the Colombo Family, in violation of New York Penal Law Sections 125.25 and 20.00.

### Racketeering Act Four
### (<u>Murder -- Nicholas Grancio</u>)

20. On or about January 7, 1992, the defendants
ALPHONSE PERSICO, also known as "Allie Boy," and JOSEPH
TOMASELLO, also known as "Joe T," together with others, knowingly
and intentionally murdered Nicholas ("Nicky Black") Grancio, a
member of the Orena faction of the Colombo Family, in violation
of New York Penal Law Sections 125.25 and 20.00.

### Racketeering Act Five
### (<u>Murder -- John Minerva</u>)

21. On or about March 25, 1992, the defendants
ALPHONSE PERSICO, also known as "Allie Boy," and JOSEPH
TOMASELLO, also known as "Joe T," together with others, knowingly
and intentionally murdered John Minerva, a member of the Orena
faction of the Colombo Family, in violation of New York Penal Law
Sections 125.25 and 20.00.

### Racketeering Act Six
### (<u>Murder -- Michael Imbergamo</u>)

22. On or about March 25, 1992, the defendants
ALPHONSE PERSICO, also known as "Allie Boy," and JOSEPH
TOMASELLO, also known as "Joe T," together with others, knowingly
and intentionally murdered Michael Imbergamo, a member of the
Orena faction of the Colombo Family, in violation of New York
Penal Law Sections 125.25 and 20.00.

### Racketeering Act Seven
### (<u>Murder -- Lorenzo Lampasi</u>)

23. On or about May 22, 1992, the defendants ALPHONSE
PERSICO, also known as "Allie Boy," and JOSEPH TOMASELLO, also

8

known as "Joe T," together with others, knowingly and
intentionally murdered Lorenzo ("Larry") Lampasi, a member of the
Orena faction of the Colombo Family, in violation of New York
Penal Law Sections 125.25 and 20.00.

## Racketeering Act Eight
## (Attempted Murder -- Joel Cacace)

24. On or about February 26, 1992, the defendants
ALPHONSE PERSICO, also known as "Allie Boy," and JOSEPH
TOMASELLO, also known as "Joe T," together with others, with the
intent that Joel ("Joe Waverly") Cacace, a member of the Orena
faction of the Colombo Family, be murdered, engaged in conduct
that tended to effect the commission of that murder, in violation
of New York Penal Law Sections 125.25 and 110.00.

## Racketeering Act Nine
## (Loansharking Conspiracy)

A.  Extortionate Extensions of Credit

25. From in or about and between 1985 and May 13,
1993, both dates being approximate and inclusive, the defendant
RICHARD FUSCO, together with others, conspired to make
extortionate extensions of credit, in violation of Title 18,
United States Code, Section 892.

B.  Extortionate Collections of Credit

26. From in or about and between 1985 and May 13,
1993, both dates being approximate and inclusive, the defendant
RICHARD FUSCO, together with others, conspired to use

9

extortionate means to collect and attempt to collect extensions
of credit, in violation of Title 18, United States Code, Section
894.

(Title 18, United States Code, Sections 1962(c) and
3551 et seq.).

## COUNT TWO
### (Racketeering Conspiracy)

27.   The allegations of paragraphs one through eleven
and fourteen through twenty-six are hereby realleged and
incorporated as if fully set forth herein.

28.   From in or about 1985 up to and including May 13,
1993, both dates being approximate and inclusive, in the Eastern
District of New York and elsewhere, the defendants ALPHONSE
PERSICO, also known as "Allie Boy," JOSEPH TOMASELLO, also known
as "Joe T," and RICHARD FUSCO, together with others, being
employed by and associated with the Colombo Family, which
enterprise engaged in, and its activities affected, interstate
commerce, conspired to conduct and participate, directly and
indirectly, in the conduct of the affairs of that enterprise
through a pattern of racketeering activity by agreeing to commit
and actually committing the acts of racketeering with which each
such defendant is charged in Count One.

(Title 18, United States Code, Sections 1962(d) and
3551 et seq.).

*Count #9*
*in S-9*

10

### COUNT THREE
#### (Conspiracy to Murder)

29.   Paragraphs one through eleven and sixteen and
seventeen of this indictment are realleged and incorporated as if
fully set forth herein.

30.   In or about and between June 1991 and May 13,
1993, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, for the purpose of
gaining entrance to and maintaining and increasing their
positions in the Colombo Family, an enterprise engaged in
racketeering activity as defined in Title 18, United States Code,
Section 1959(b), the defendants ALPHONSE PERSICO, also known as
"Allie Boy," JOSEPH TOMASELLO, also known as "Joe T," and RICHARD
FUSCO, together with others, knowingly and intentionally
conspired to murder members of the Orena faction of the Colombo
Family, in violation of New York Penal Law Sections 125.25 and
105.15.

(Title 18, United States Code, Sections 1959(a)(5) and
3551 et seq.).

### COUNT FOUR
#### (Murder -- Vincent Fusaro)

31.   Paragraphs one through eleven and sixteen and
seventeen of this indictment are realleged and incorporated as if
fully set forth herein.

32.   On or about December 6, 1991, within the Eastern
District of New York and elsewhere, for the purpose of gaining
entrance to and maintaining and increasing their positions in the

Colombo Family, an enterprise engaged in racketeering activity as defined in Title 18, United States Code, Section 1959(b), the defendants ALPHONSE PERSICO, also known as "Allie Boy," and JOSEPH TOMASELLO, also known as "Joe T," together with others, knowingly and intentionally murdered Vincent Fusaro, a member of the Orena faction of the Colombo Family, in violation of New York Penal Law Sections 125.25 and 20.00, and the defendants ALPHONSE PERSICO, also known as "Allie Boy," and JOSEPH TOMASELLO, also known as "Joe T," did know that such murder was a reasonably foreseeable consequence of their membership in the murder conspiracy charged in Count Three of this indictment.

(Title 18, United States Code, Sections 1959(a)(1), 2 and 3551 et seq.).

COUNT FIVE
(Murder -- Nicholas Grancio)

33.  Paragraphs one through eleven and sixteen and seventeen of this indictment are realleged and incorporated as if fully set forth herein.

34.  On or about January 7, 1992, within the Eastern District of New York and elsewhere, for the purpose of gaining entrance to and maintaining and increasing their positions in the Colombo Family, an enterprise engaged in racketeering activity as defined in Title 18, United States Code, Section 1959(b), the defendants ALPHONSE PERSICO, also known as "Allie Boy," and JOSEPH TOMASELLO, also known as "Joe T," together with others, knowingly and intentionally murdered Nicholas ("Nicky Black") Grancio, a member of the Orena faction of the Colombo Family, in

violation of New York Penal Law Sections 125.25 and 20.00, and
the defendants ALPHONSE PERSICO, also known as "Allie Boy," and
JOSEPH TOMASELLO, also known as "Joe T," did know that such
murder was a reasonably foreseeable consequence of their
membership in the murder conspiracy charged in Count Three of
this indictment.

(Title 18, United States Code, Sections 1959(a)(1), 2
and 3551 et seq.).

### COUNT SIX
### (Murder -- John Minerva)

35.  Paragraphs one through eleven and sixteen and
seventeen of this indictment are realleged and incorporated as if
fully set forth herein.

36.  On or about March 25, 1992, within the Eastern
District of New York and elsewhere, for the purpose of gaining
entrance to and maintaining and increasing their positions in the
Colombo Family, an enterprise engaged in racketeering activity as
defined in Title 18, United States Code, Section 1959(b), the
defendants ALPHONSE PERSICO, also known as "Allie Boy," and
JOSEPH TOMASELLO, also known as "Joe T," together with others,
knowingly and intentionally murdered John Minerva, a member of
the Orena faction of the Colombo Family, in violation of New York
Penal Law Sections 125.25 and 20.00, and the defendants ALPHONSE
PERSICO, also known as "Allie Boy," and JOSEPH TOMASELLO, also
known as "Joe T," did know that such murder was a reasonably

13

foreseeable consequence of their membership in the murder
conspiracy charged in Count Three of this indictment.

(Title 18, United States Code, Sections 1959(a)(1), 2
and 3551 et seq.).

<div align="center">

COUNT SEVEN
(Murder -- Michael Imbergamo)
</div>

37.   Paragraphs one through eleven and sixteen and
seventeen of this indictment are realleged and incorporated as if
fully set forth herein.

38.   On or about March 25, 1992, within the Eastern
District of New York and elsewhere, for the purpose of gaining
entrance to and maintaining and increasing their positions in the
Colombo Family, an enterprise engaged in racketeering activity as
defined in Title 18, United States Code, Section 1959(b), the
defendants ALPHONSE PERSICO, also known as "Allie Boy," and
JOSEPH TOMASELLO, also known as "Joe T," together with others,
knowingly and intentionally murdered Michael Imbergamo, a member
of the Orena faction of the Colombo Family, in violation of New
York Penal Law Sections 125.25 and 20.00, and the defendants
ALPHONSE PERSICO, also known as "Allie Boy," and JOSEPH
TOMASELLO, also known as "Joe T," did know that such murder was a
reasonably foreseeable consequence of their membership in the
murder conspiracy charged in Count Three of this indictment.

(Title 18, United States Code, Sections 1959(a)(1), 2
and 3551 et seq.).

14

## COUNT EIGHT
### (Murder -- Lorenzo Lampasi)

39. Paragraphs one through eleven and sixteen and seventeen of this indictment are realleged and incorporated as if fully set forth herein.

40. On or about May 22, 1992, within the Eastern District of New York and elsewhere, for the purpose of gaining entrance to and maintaining and increasing their positions in the Colombo Family, an enterprise engaged in racketeering activity as defined in Title 18, United States Code, Section 1959(b), the defendants ALPHONSE PERSICO, also known as "Allie Boy," and JOSEPH TOMASELLO, also known as "Joe T," together with others, knowingly and intentionally murdered Lorenzo ("Larry") Lampasi, a member of the Orena faction of the Colombo Family, in violation of New York Penal Law Sections 125.25 and 20.00, and the defendants ALPHONSE PERSICO, also known as "Allie Boy," and JOSEPH TOMASELLO, also known as "Joe T," did know that such murder was a reasonably foreseeable consequence of their membership in the murder conspiracy charged in Count Three of this indictment.

(Title 18, United States Code, Sections 1959(a)(1), 2 and 3551 et seq.).

## COUNT NINE
### (Assault -- Joel Cacace)

41. Paragraphs one through eleven and sixteen and seventeen of this indictment are realleged and incorporated as if fully set forth herein.

42.   On or about February 26, 1992, within the Eastern
District of New York and elsewhere, for the purpose of gaining
entrance to and maintaining and increasing their positions in the
Colombo Family, an enterprise engaged in racketeering activity as
defined in Title 18, United States Code, Section 1959(b), the
defendants ALPHONSE PERSICO, also known as "Allie Boy," and
JOSEPH TOMASELLO, also known as "Joe T," together with others,
knowingly and intentionally committed an assault in which a
dangerous weapon was used and serious bodily injury resulted, to
wit:  the shooting of Joel ("Joe Waverly") Cacace, a member of
the Orena faction of the Colombo Family, in violation of New York
Penal Law Sections 120.05 and 20.00, and the defendants ALPHONSE
PERSICO, also known as "Allie Boy," and JOSEPH TOMASELLO, also
known as "Joe T," did know that such assault was a reasonably
foreseeable consequence of their membership in the murder
conspiracy charged in Count Three of this indictment.

(Title 18, United States Code, Sections 1959(a)(3), 2
and 3551 et seq.).

## COUNT TEN
### (Conspiracy to Make Extortionate Extensions of Credit)

43.   Paragraphs one through eleven of this indictment
are realleged and incorporated as if fully set forth herein.

44.   From in or about and between 1985 and May 13,
1993, both dates being approximate and inclusive, the defendant

16

RICHARD FUSCO, together with others, conspired to make
extortionate extensions of credit.

(Title 18, United States Code, Sections 892 and 3551 et
seq.).

### COUNT ELEVEN
### (Conspiracy to Make Extortionate Collections of Credit)

45.   Paragraphs one through eleven of this indictment
are realleged and incorporated as if fully set forth herein.

46.   From in or about and between 1985 and May 13,
1993, both dates being approximate and inclusive, the defendant
RICHARD FUSCO, together with others, conspired to use
extortionate means to collect and attempt to collect extensions
of credit.

(Title 18, United States Code, Sections 894 and 3551 et
seq.).

### COUNT TWELVE
### (Using and Carrying Firearms)

47.   In or about and between June 1991 and May 13,
1993, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
ALPHONSE PERSICO, also known as "Allie Boy," JOSEPH TOMASELLO,
also known as "Joe T," and RICHARD FUSCO, together with others,
each used and carried firearms during and in relation to crimes
of violence, to wit:   the crimes with which each such defendant
is charged in Counts One through Nine of this indictment.

(Title 18, United States Code, Sections 924(c)(1), 2
and 3551 et seq.).